PERRY & VAN HOUTEN vs. BEARDSLEE & WIFE.

The hirer of a slave is not responsible for his running away, unless it be by some fault of the hirer. This must be shewn by the plaintiff—no general rule can be laid down as to the care to be taken by the hirer to prevent an escape, nor as to the efforts to effect a recapture; these depend upon the nature of the service in which the slave is engaged, and the circumstances attending the escape as well as the character of the hiring.

*Perry & Van Houten vs. Beardslee & wife.*

## APPEAL from St. Louis Circuit Court.

GANTT, *for Appellants, insists:*

1st. The court erred in refusing to permit the defendants below to prove, what was the custom, of trade and general usage, in cases of hiring slaves to steamboats. 2 Greenleaf on Evidence, § 251, and cases there cited.

2nd. The court erred in refusing to instruct the jury, as prayed by defendants, as to the degree to which the liability of defendants was modified and changed by the nature of the property hired, and the incompatibility of his being at all serviceable as a servant with his being placed in such surveillance as would ensure his not escaping at will from the boat. McDonald vs. Clark, 4 McCord, 223; Boyce vs. Anderson and others, 2 Peters, U. S. Rep., 150.

3rd. The burden of proving the default of the defendants, their carelessness or negligence, is on the plaintiffs in an action like this, and is not to be presumed, but proved. 7 Mo. Rep., 430, Christy vs. Price's adm'r.

4th. The judgment is erroneous as against Durst, who was not served with process, and did not appear to the action. 7 Mo. Rep., Bascom vs. Young, page 1.

TODD, *for Appellees, insists :*

1st. The court did not err in not suffering the aforesaid question to Carlisle to be answered, and the admission of proof subsequently offered by the defendants, of a custom and usage releasing boats from responsibility for hired slaves, who runaway.

2nd. The court did not err in giving the instructions asked for by plaintiffs. 6 Mo. Rep., 323.

3rd. The court did not err in refusing the instructions asked for by defendants, designated as Nos. 2, 7, 8, 9, 10, 11, and 12.

4th. The instructions given, taken altogether, were a fair and sufficient exposition of the law of the case under the evidence, and this is sufficient. 7 Mo. Rep., p. 128.

5th. As this court will not reverse because of erroneous instructions given, provided the party complaining has sustained no injury thereby, (6 Mo. Rep., 301; 7 Mo. Rep., 416, 419;) so, it should not reverse because of the refusal to give a right instruction, if the party complaining is not thereby injured.

6th. The defendants assign as one cause for a new trial, that the court instructed the jury orally and have not preserved those instructions. If this is evidence to this court of the fact, then the court is not fully possessed of the case, and cannot know but the court below did instruct the jury, as desired by the defendants in Nos. 2 and 10.

7th. The verdict is according to the evidence and law under the evidence.

8th. The action was properly conceived. References to authority on this point, certainly cannot be needed. If so, see 1 Blackstone Com., p. 443, and note thereto.

NAPTON, J., *delivered the opinion of the Court.*

Beardslee and wife brought an action on the case, against Perry and others, owners and officers of the steamboat "Harry of the West," to recover damages for the loss of a slave, hired as a fireman on said boat The plaintiffs obtained a verdict and judgment.

37

The evidence on the trial conduced to show, that the slave belonged to Mrs. Beardslee, then Miss Smith—that he was white, with blue eyes and light sandy hair; that her agent, John Carlyle, hired the boy to Van Houten, captain of the Harry of the West, by the month and for no definite period. The boy made his escape at St. Louis. A letter was addressed to Carlyle, by Mr. Sparr of the Virginia Hotel, where Carlyle usually boarded when in St. Louis, at the instance of Van Houten, which requested his presence in St. Louis on business, and when Carlyle arrived there from Alton, where he was at the receipt of the letter, he found that the negro had escaped, and he settled with Van Houten for the hire.

The defendants offered to prove, that according to usage and custom, prevailing among steamboat owners and masters, the latter are not considered responsible for slaves hired by them, in case of their running away, unless by express agreement. This evidence was rejected.

' The court, at the plaintiff's instance, instructed the jury as follows:

"It is the duty of the hirer of a slave, in case the slave runs away, to use such diligence for retaking the slave, as a diligent owner would use, and in a suit against a hirer for such a loss, unless the hirer *prove* such diligence on his part to retake the slave, he is liable for the loss. If therefore the jury in this case, on this principle find the defendants guilty, they ought to find for the plaintiffs and assess their damages at the value of the slave at the time of his loss, with interest."

At the instance of the defendants, the court gave the following instructions :

"If the jury believe from the evidence, that the negro David was hired to the owners of the steamboat "Harry of the West;" that while in their service he ranaway, and has been lost to plaintiffs without fault, carelessness or negligence on the part of said owners, then the jury will find for defendants."

"The law of bailments, leasing or hiring property generally, is not construed as rigorously, in the case of a negro hired to another; and the jury is authorized to consider the peculiar circumstances of the country, the vicinity of the city of St. Louis, and the State of Missouri to free States, the difficulties of retaining negroes in slavery, the age, character, sagacity, color and general appearance of the negro David, in connection with the defence."

"The burden of proof is on plaintiffs, to show that the negro David's running away was caused by the misconduct, fault, carelessness or negligence of defendants, and without such proof the jury should find for defendants."

"This being an action on the case for wrongs alledged, the plaintiffs are not entitled to a verdict, unless the jury believe from the evidence, that defendants were guilty of such carelessness or negligence, as caused or allowed of the negro's running away."

"If the jury believe, that the negro David was hired to the owners of the steamboat Harry of the West, before plaintiffs can recover in this action, they are bound to establish by evidence, that a demand was made for the negro, *before* the suit was brought."

The court refused to give the following instructions, asked by the defendants:

"If the jury believe from the evidence, that the negro David ranaway from the Harry of the West without fault, carelessness or negligence on the part of said owners, they will find for defendants, although said owners did not use the extreme diligence that the owner might be disposed to use to retake him, and they were not bound to encounter as great expense as the owner of the slave might be willing to encounter, in case the negro escaped to a distant country."

"This being an action on the case for torts, the plaintiffs cannot recover, if the jury believe from the evidence, that the negro boy David, when he ranaway, escaped to Cincinnati, Ohio, or any other free State, without the permission, connivance, carelessness or negligence of the defendants."

"If the jury believe from the evidence, that the boy ranaway, and escaped to Cincinnati, Ohio, or any other free State, the defendants were not bound as matter of diligence, to make pursuit, nor to incur heavy expenses in making efforts to retake him."

"If said negro ranaway to Cincinnati, Ohio, without fault, negligence or carelessness on the part of defendants, and without unreasonable delay, the fact was communicated by defendants to the plaintiffs, or either of them, or their lawful agent, or any of them, who immediately made reasonable efforts to ascertain where said negro was, and to recapture him, without success, the defendants are entitled to the benefit of such efforts in the mind of the jury, as if made by defendants, as bearing upon the question, whether the plaintiffs have been really damnified, or injured by any omissions of defendants, in the matter of efforts to recapture said negro."

"If the jury believe from the evidence, that pursuit of said boy David, to recapture him, would have been unavailing and useless, and that he ranaway and reached the State of Ohio, or any other free State, without the connivance, carelessness or negligence of defendants, and that ef-

forts to retake him would have caused extraordinary trouble and expense, the law applicable to this action, does not consider plaintiffs as damnified by defendants, and there should be a verdict for the *defendants.*"

"The duties of the bailee of a slave, as to care of the slave and diligence, so as to prevent his running away, are to be considered by the jury in connection with the circumstances of the country, the nature and appearance, and sagacity of the slave himself, and the difficulties of holding such property or preventing negroes from running away."

"The plaintiffs are not entitled to recover of defendants, merely because fresh pursuit was not made after the negro by defendants, or no efforts were made by them to retake him, if they believe from the evidence, that such pursuit and such efforts would have been unavailing."

The points were preserved by bill of exceptions, and the case brought here by appeal.

This case seems to have been decided under a misunderstanding of some expressions which were used by the Judge, who delivered the opinion of this Court in the cases of Ellett vs. Bobb, 6 Mo. R., 324; and Perkins vs. Reed, adm'r., 8 Mo. R., 33. The language of the court in those cases may not have been sufficiently guarded, and may require explanation. The first instruction given by the court, in the case now under consideration, declares it "to be the duty of the hirer of a slave, in case the slave runs away, to use such diligence for retaking the slave as a diligent master would use," and that a failure in this respect would make him responsible for the loss. This instruction is couched in the language used by this Court, in the case of Ellett vs. Bobb. The fifth instruction which the court also gave, at the instance of the defendants, was as follows: "This being an action on the case, for wrongs alleged, the plaintiffs are not entitled to a verdict, unless the jury believe from the evidence, that defendants were guilty of such negligence or carelessness, as caused or allowed the negro's running away." These two instructions would appear to conflict; for the first makes it the duty of the bailee to use diligence in retaking the runaway slave, and makes him responsible for a neglect of such diligence, and the last declares the plaintiffs not entitle to recover, unless there has been some carelessness or negligence in permitting the escape.

If it had been intended by the first instruction, that the failure of the bailee to use reasonable exertions to retake the slave, in a case where the propriety of such exertions was shown, would be evidence of a negligent or permissive escape, the instruction would be unexceptionable and not inconsistent with the one which followed. But before such an in-

struction could with propriety be given, there ought certainly to be some foundation for it, in the testimony, showing the circumstances under which the escape took place.

The Circuit Court adopted the language of this Court, in the case of Ellett vs. Bobb, and applied it literally to the case at bar. In the case of Ellett vs. Bobb, and the subsequent case of Reed vs. Perkins, this Court very distinctly recognized it as the duty of a bailee of a slave, to use some exertions to retake one who had runaway, and at all events to give *immediate* information to the owner. The question in those cases was not however calculated to require any particular explanation of the nature and extent of this duty. The only question there discussed, was whether the bailee or the owner, where an escape took place, should bear the loss, or how it should be divided between them. We see no reason to retract the opinions expressed in those cases, provided they be understood with reference to the circumstances of the case, and in a restricted sense. It must be manifest, that this Court never designed to declare it a rule of law, that a bailee of a slave, for a month or a year, was bound to pursue him, after he had escaped, to Cincinnati or Canada. It is obvious that the ideas of escape and recapture, were intimately associated, and were designed to be limited by time and circumstances.— It would have been better, perhaps, to have declared, that a failure to use reasonable exertions to retake a runaway slave, would be evidence of a negligent or permissive escape. What exertions would be reasonable, or whether the circumstances under which the escape took place, would require any, on the part of the bailee, would be a proper subject for enquiry in a given case.

It would be impracticable to establish a general rule, applicable alike to all cases. A slave, for instance, is hired in the country, his master living in one county, and the bailee living in another and distant county. The slave disappears, and as frequently happens, he is concealed in some neighboring cabin or woods, and information of this is communicated to the bailee. Would he be held justified in failing to have the slave retaken? In such a case it will be seen at once, that the failure to retake the slave, before a final escape was made, would show a direlection of duty on the part of the hirer, which might be productive of the greatest mischief to the owner. Exertions used in time, and before the escape can be considered as absolutely effected, may be sufficient to secure the slave; and, if those exertions be omitted, it may be impracticable, with every exertion on the part of the owner, subsequently to get his slave. The omission of such exertions as these would be a breach of

that good faith, which is understood to attach to the contract of time. The escape would in short, be a permissive one; it could not be regarded as having taken place, without the fault or negligence of the bailee. And this brings back the question, at last, to the same principle asserted by the Circuit Court in the fifth instruction, and which we suppose must govern all cases of this character.

The circumstances attending the hiring of slaves upon steamboats, are certainly proper to be considered in connexion with the duties of the bailees. The nature of the contract is not altered by this circumstance, nor is the responsibility of the hirer different. But what would constitute negligence and bad faith in the one case, might not be so considered in another. Where a slave is hired as a boat hand, we must presume that the owner is fully aware, that every facility for escape is afforded by the very nature of the service. He is apprised, that the boat will touch and be detained at the wharves of populous towns; that it passes near the banks, and will stop at the landings of States where slavery is not tolerated; and that his slave will be associated with free negroes, and others who will not be likely to leave him in ignorance of the various opportunities which present themselves for escape. The owner is aware of all this, and must be presumed to contract with reference to it. He insures his slave, or indemnifies himself for the increased risk by increased wages. Does the owner expect, that in case his slave escapes, whilst the boat is lying at a woodyard, or putting out freight at some intermediate landing, the captain and crew will relinquish the boat, or abandon the trip, for the purpose of hunting up the runaway? No such expectations are entertained. The captain or master is expected to act with good faith; he is bound to do so; but he cannot be expected in circumstances like those described, to use even the same means of recapture, which a bailee under other circumstances might be required to exert.

In the case at bar, the evidence on the record is entirely silent, as to the mode or circumstances under which the escape took place. It only appears that the slave was missing at St. Louis; and was afterwards seen in Cincinnati. Whether he was lurking about St. Louis, for some time after his escape, or on an adjoining boat, or the same boat, and could have been easily retaken, or whether he made an immediate escape from the city, does not appear. It does not appear in what way, or at what time the slave escaped, nor whether both time, place and mode were unknown. It would seem the duty of the plaintiffs to show some evidence, so as to make out a *prima facie* case of negligence, if negligence existed, without requiring him to prove a negative. If circumstances calcu-

lated to throw a suspicion upon the conduct of the bailee be shown, the jury will readily enough draw unfavorable inferences, if the defendant does not explain them, when he has it in his power to do so. There are no obstacles to the plaintiff's recovery, on the score of the burden of proof, if a case exists which would authorize a recovery. The present case, under the instructions of the court, may have turned upon the mere fact, that no proof was shown of any efforts to retake the slave. It did not appear whether such efforts would have been proper, or necessary, and though the jury were told, that it devolved upon the plaintiffs to make out a case of negligence, or carelessness, yet the instruction given for the plaintiffs, and the refusal of the 11th and 12th instructions asked by the defendants, may have induced the opinion that the defendants were bound to show some efforts to recapture the slave, before any suspicion was thrown upon the propriety of their conduct, by the evidence of the plaintiffs. Under these circumstances we shall award a new trial.

The other Judges concurring, the judgment is reversed and the cause remanded.