CHARLES BEARDSLEE AND WIFE vs. JOHN PERRY, ISAAC VAN HOUTEN AND JAMES P. DURST.

In order to make the hirer of a slave responsible for his running away, a *prima facie* case of negligence, on the part of the hirer, must be proven. See 10 Mo. Rep. 568.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This suit was brought by the plaintiffs against the defendants and one Isaac Van Houten, in the circuit for the county of St. Louis, for the April term, 1845, thereof, to recover the value of a slave hired by the plaintiff Hannah, before her marriage with the plaintiff Charles Beardslee, to the defendants, to serve on their steamboat called the "Harry of the West," and lost while in their service.

The declaration is in case, and consists of three counts.

The first count is in trover, alleging that the said Hannah, while unmarried, was possessed of said slave, and casually lost him—that defendants came possessed of him by finding, &c.

The second count alleges that the said Hannah, while sole, hired said slave to defendants—afterwards she married the plaintiff Charles Beardslee—that defendants contriving to wrong plaintiffs, would not return said slave, and took such bad and negligent care of him, that by reason of their negligence and carelessness, said slave became totally lost to them.

---

Beardslee and wife vs. Perry and others.

---

The third count is in substance like the second.

The general issue was pleaded. Van Houten died after suit began and before trial.

On the trial, the plaintiffs proved by John Carlisle that the slave was, in March, 1844, the property of said Hannah, who was then unmarried ; that in said month he, as agent, of said Hannah, hired the slave to the steamboat Harry of the West—for no particular time, at certain wages a month—that defendants were then the owners of said boat ; that said Hannah then resided at Cape Girardeau in this State, and was in the month of September next, after said hiring, married to plaintiff, Beadslee ; that at the time of said hiring, he was pilot on said boat ; that afterwards becoming sick, he left the boat and went to Alton temporarily ; that when he left the boat, the negro was upon it ; that while at Alton he received a letter from a Mr. Green, of the Virginia Hotel, in St. Louis, stating that Van Houten (then captain of said boat) desired to see him upon business. No mention was made about the slave ; that he immediately came down to St. Louis, and upon the same or the next day went aboard of the Harry of the West to collect the wages of said slave ; that the clerk, who was Durst, one of the defendants and owners of said boat, was about paying wages up to that time, but before doing it, he sent for the mate to ascertain if any deduction was to be made for lost time or other cause ; that the mate came, and said that the boy had run away ; that it was the first notice he had had of it, nor did Durst know of it before ; the boy run away at St. Louis, and his impression at that time was that the boat had made a trip to New Orleans and back since, but does not recollect ; that when at St. Louis he made the Virginia Hotel his home, and captain Van Houten knew it ; that the proprietors of the hotel knew that he was at Alton ; that upon learning the fact of the slaves running away, he wrote said Hannah of it, and he looked about the city for him ; did not know of any other efforts being made to recover the slave by said Hannah or any one else. Plaintiff proved by Mr. Valleau, that in November of that year he called, at the request of the plaintiffs, upon Van Houten, and demanded of him the slave ; that Van Houten replied that he had run away ; he was going to take no more trouble about him ; that the boat was not liable for him, and would not pay for him.

This was the substance of the evidence, and the plaintiffs rested.

The defendants thereupon asked the court to give the following instructions, to wit :

"This being an action on the case for wrongs alleged, the plaintiffs have offered no evidence which proves that defendants were guilty of such carelessness or negligence as caused or allowed of the negroe's running away, and the jury must find for the defendants."

To this instruction the plaintiffs objected, but the court gave it, to which decision of the court the plaintiffs excepted.

Thereupon the plaintiffs took a a non suit, with leave to file a motion to set aside the same, and grant a new trial, which motion was duly filed, containing as a reason, that the court erred in giving said instruction. The court, upon the hearing of said motion, refused to grant it, to which decision of the court the plaintiffs excepted, filed their bill of exceptions in this behalf, and have brought the case to this court by writ of error.

## TODD, for plaintiffs in error.

The plaintiffs had shown enough to put the defendants on their defence.

1st. They had shown a loss of the slave by the statement of the defendants, but the manner of that loss is known only from the defendants, who say that the slave ran away. This is not proof of that fact. A party statement, although made together, are not of course to have equal credit. He may be held to what he says charging himself, but what he says in discharge may be disregarded, and especially is this so and should be so, in cases where he is the only person by his position in the matter, who can prove the fact—who has the evidence, if it exists, and does not produce it.

2nd. But the evidence further showed that there had been carelessness, and a total want of

Beardslee and wife vs. Perry and others.

effort to re-take. A trip or two had been made since the slave run away, and yet the first clerk of the boat, who was also part owner, knew nothing about the loss, and was paying wages up to the time of Carlisle's calling for it.

3rd. The captain of the boat, Van Houten, who was also part owner, nor any one else, gave any notice to Carlisle or any one else, of the loss of the boy, yet it was known where Carlisle was, and he was near. The letter written him, although after the loss, said nothing about it. Yet in case of such a loss, the only chance of recapture is immediate knowledge of the loss, and immediate pursuit. The evidence show a want of the former, and there is no evidence of the latter, and yet the defendants are the only ones who can prove such efforts, if made, but offer no proof thereof. It is a general rule, that that party shall produce the evidence who alone is capable of doing it, in cases where for his protection it is necessary that the fact should exist. 1 Greenleaf on Evidence, § 79.

A bailee who claims to be exonerated from the re-delivery of the thing bailed on the ground of its being lost or destroyed, must show that he used due care and diligence to prevent the loss. 7 Cowen Rep. p. 497, 500.

CROCKETT & KASSON, for defendants in error.

1st. That the instructions given by the court was right. There was no evidence given, tending to prove that the plaintiffs were entitled to recover in trover.

If there was no evidence, the court rightly instructed the jury to find for the defendants. Lee vs. David, 11 Mo. R. 115.

2nd. That the defendants are not liable unless the slave escaped by some fault of the master or officers of the boat. This must be shown by the plaintiffs affirmatively, and was not shown in this case. See decision in this case, 10 Mo. R. 568.

3rd In this case, there was no evidence of the manner or circumstances under which the slave escaped. These it was incumbent on the plaintiffs to prove, before the defendants can be held liable for a permissive escape, or can be required to produce evidence in exoneration.

This case having before been before this court, the principles settled in that case are regarded as conclusive of this.

4th. It was not necessary for the defendants to show whether any or what efforts were made to recapture the slave, until the plaintiffs had first made out a case of negligence or carelessness, which was not done in this case.

RYLAND, J., delivered the opinion of the court.

From the above statement, it will be seen that the point before us for adjudication involves the propriety of the only instruction given by the court below for the defendants. In order to be able the better to understand this point, we will here insert the entire evidence produced by the plaintiffs. "The deposition of John Carlisle: In March, 1844.

I hired to the Harry of the West, a negro boy (David) belonging to Hannah Andromache Smith, now the wife of Charles Beardslee, at the time that I hired said boy, I was employed on said boat as pilot. I made the contract of hiring with the mate of the boat, as was customary. This was about the 10th or 11th of March, he arrived here about this

time, and I found said boy who had been employed on the Ben Frank-lin and had left her. I then hired him to the Harry of the West; Miss Smith, the owner of the boy, was at that time at Cape Girardeau in this State. I was acting as agent for Miss Smith, and had always hired ne-groes for her. I hired said boy to said boat as a fireman, by the month, and for no definite period. The trip that I hired the boy, I went on the boat to New Orleans, on said trip and back, and when I left the boat at this place, the boy was on board.

Some one or two trips after this, the boy left her at St. Louis. I think it was in May. The contract for said hiring was not in writing, nor was there any stipulation made that the boy should be returned. Nothing was said about the terms, except the monthly wages. At the time the boy left the boat, I was the agent of Miss Smith. She was then single, and was not married to Mr. Beardslee until September next after the hiring of the boy. Mr. Green, of the Virginia Hotel, at the instance of Capt. Van Houten, addressed me a letter at Alton, Ill., desiring that I would come to St. Louis; that he wished to see me on some business, but made no mention of the boy. I accordingly came and went on board (to settle for the wages of the two boys, the day of my arrival or the next day,) the Harry of the West, and found that the boy David was not there. Between the time that the boy run away, and the time that I went on board to collect the wages, I do not know that the boat made a trip. At that time, it was my impression that she had, but now I do not recollect. I immediately on the same day of re-ceiving Green's letter, came down to St. Louis. I settled for the hiring of the boy David, up to the time that he left the boat, on the day that I arrived from Alton. I was then acting as Miss Smith's agent, and acted as her agent in making the settlement. I did not at that time as-sert any claim for damages on account of the boy's having run off. I did not intimate to the officers, that I claimed damages. I said nothing about it.

2nd question. Do you recollect in this conversation with captain Van Houten, that any thing was said about his having sent a message to you in relation to the running away of the said boy?

Answer—I do not. I do not recollect that captain Van Houten said to me any thing about the letter; that Green wrote me, I think it is probable that he did. It has been so long, I cannot remember. The letter stated that he, Green, had written it at the instance of captain Van Houten. I do not know where this letter now is—it may have been burnt up or destroyed, or it may be among my old letters. My impression is, that it is destroyed. I looked for the boy about town

considerably, and could not find him, and then wrote to his mistress apprising her of the boy's having run off. Supposing that he might be about Cape Girardeau, I did not advertise said boy. I think it was talked about, but I cannot say that it was done. I received no letter from Miss Smith in reply to one referred to. She came up to St. Louis in a short time after this, when I had a conversation with her upon the subject. At first it was her impression that the boy had not ran away; that he was somewhere about and would return again. She had owned the boy but a short time, and had herself hired him to the Ben Franklin. The boy had never hired his own time. Miss Smith, through me, purchased said boy at New Orleans from a trader of negroes from Kentucky. John Calvert of St. Louis was acting as the agent for said trader, and made the trade for him. No efforts were made in New Orleans or Kentucky to recover the boy that I know. I enquired of Calvert as to the place or residence of said trader. I think he told me it was somewhere between Lexington and Maysville, Ky. I do not know that the trader was ever written to concerning any information as to where the boy was raised, or for any information about him.

I do not know that any efforts were made about the city by Miss Smith or myself, to recover the boy other than my inquiries in relation to him.

(The third question related to the general custom or understanding among steamboit officers and owners, the liability or responsibility for slaves hired, when they run away. It was objected to. Objection sustained—and question ruled out as improper. I will not notice it or the answer any further.)

*Cross-examined.* At the time that I hired these negroes to the Harry of the West, the owners of said boat were Capt. Van Houten, John Perry, Holmes & Swanwick, and James P. Durst. James P. Durst was clerk of said boat, when I settled for the wages. When I called upon Durst for the settlement of the wages, he was going to pay me up to the time of my calling; he did not know that the negro had run away. He paid me up to the time that the negro had run away; what difference was made in his wages, I do not recollect—the reason. why he did not pay up to the time of my calling, was, that he called for the mate to know if the boy had lost time, or anything of that kind, that reduction might be made. The mate came in and stated that the boy had run away. This was the first notice that I had of the boy's running away; I had not seen the captain then—having just come down. I think the wages commenced on the 17th March, he left here on that day. But I do not recollect that the boy was on the boat before

or then.   At the time I hired the boy to the boat, nothing was said of its being at the risk of the owner.   At the time of the hiring, I do not recollect that I mentioned to any of the officers of the boat whom the boy belonged to; but I did after the boy ran away.   I don't know that Miss Smith was at this time twenty-one years of age—I don't believe she was; I receipted for the wages in this instance, as in other similar cases, in my own name.   When in St. Louis, I always stopped at the Virginia Hotel, and have for the last two years.   I left the Harry of the West, as pilot, on account of sickness.   While at Alton the proprietor of the Viginia Hotel knew that I was there.   Capt. Van Houten knew, that when in St. Louis, I made said hotel my house.

(Signed,)                              JOHN CARLISLE.

Charles M. Valleau, then being sworn, testified that at the request of said plaintiffs in November, A. D. 1845, he demanded of Van Houten the boy David.   Van Houten replied that the boy had run away; that he was going to take no more trouble about him—that the boat was not liable for him and would not pay for him."   The plaintiffs gave no further evidence, and rested their case on this.   The defendants thereupon asked the court to give the following instruction, to-wit: "This being an action on the case for wages alleged, the plaintiffs have offered no evidence which proves the defendants were guilty of such carelessness or negligence as caused or allowed of the negro running away, and the jury must find for the defendants."   Which the court gave—to the giving of which the plaintiffs duly excepted; and thereupon the plaintiffs took a non-suit, and afterwards moved to set the same aside; which motion was overruled, and the plaintiffs excepted, and bring the case to this court by writ of error.

The question before us is, was there any evidence to support this action against the defendants.   This case has already once before been in this court; see 10th Missouri Rep. 568.   From the principles then laid down by this court, I am clearly of the opinion, that the plaintiffs had wholly failed to make out by proof their cause of action.   They had not made out a *prima facie* case.   In the opinion given in this case heretofore, this court said—"The evidence on the record is entirely silent as to the mode or circumstances under which the escape took place.   It only appears that the slave was missing at St. Louis, and was afterwards seen at Cincinnati.   Whether he was lurking about St. Louis, for some time after his escape, or on an adjoining boat, or could have been easily retaken, or whether he made an immediate escape from the city does not appear.   It does not appear in what way or

what time the slave escaped, nor whether both time, place and mode were unknown. It would seem the duty of the plaintiffs to show some evidence so as to make out a *prima facie* case of negligence, if negligence existed, without requiring him to prove a negative. If circumstances calculated to throw a suspicion upon the conduct of the bailee be shown, the jury will readily enough draw unfavorable inferences if the defendant does not explain them, when he has it in his power to do so. There are no obstacles to the plaintiff's recovery, on the score of the burden of proof, if a case exists which would authorize a recovery." In the case as it now appears upon the record, the plaintiffs have not bettered their situation.

There is no proof about the mode or time of escape, nor the circumstances. No proof of any circumstances, showing a permissive escape. The proof shows a hiring of the negro, and that he ran away. This, in my opinion, is no proof fixing negligence on the part of the defendants. The plaintiffs must show a *prima facie* case, at least. Under the principles settled by this court when this case was before it heretofore, and I agree with the views and doctrines set forth and contained in that opinion, I am clearly satisfied that the plaintiff had failed to make out the case. The circuit court then might well have given the instruction asked for by the defendants, and thereby saved the time of the court, in preventing argument, and the finding of a verdict by the jury. I am fully satisfied with its action, and therefore in my opinion the judgment must be affirmed.