JESSE ARNOT, Appellant, *v.* AUGUSTUS BRANCONIER, Respondent.

### December 4, 1883.

1. BAILMENT — NEGLIGENCE — BURDEN OF PROOF. — A bailee of a chattel received in good condition and injured while in his possession in a manner which tends to show culpable negligence on his part, must show such facts as will exonerate him.

2. —— Proof that the defendant hired of the plaintiff, a livery stable keeper, a horse and buggy to take a drive; that he failed to return them, and that they were subsequently found in the suburbs of the city in a badly damaged condition, makes a *prima facie* case in an action by the bailor for damages.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Reversed and remanded.*

C. M. NAPTON, for the appellant : The burden was on the
defendant to account for the injury.   Schouler's Bailments,
23–25 ; *Bush* v. *Miller*, 13 Barb. 481 ; *Logan* v. *Matthews*,
6 Barb. 417 ; *Goodfellow* v. *Meegan*, 32 Mo. 28 ; *Wisner*
v. *Chesley*, 53 Mo. 547.

GARESCHÉ & HOBEIN, for the respondent : The plaintiff
must prove a *prima facia* case of negligence.   *Perry* v.
*Beardslee*, 10 Mo. 574; *Beardslee* v. *Perry*, 14 Mo. 93;
*McCarthy* v. *Wolff*, 40 Mo. 523.

THOMPSON, J., delivered the opinion of the court.

The substance of the petition is that  the plaintiff, a
livery stable keeper, hired a horse and buggy to the defend-
ant, and that while the same were in his charge, they were
damaged through his negligence in the amount sued for.
At the close of the plaintiff's case, the court instructed the
jury that the plaintiff could not recover, and accordingly the
only question in the case is whether the evidence of the
plaintiff made out a *prima facie* case of negligence such  as
shifted the burden of proof on the defendant.

This evidence was, without abbreviation, as follows :
" Claude Kilpatrick testified for the plaintiff as follows : Jesse
Arnot is the owner and proprietor of a livery stable in  this
city.   I am employed there as book-keeper and collector.
In  the early part of last August the defendant hired a horse
and buggy from plaintiff to take a drive, for which the
charge was $4.   He drove the buggy himself, and when he
left the stable the mare was in good condition.   She
was  a good driving animal, and was all right when
defendant started out with her.   He did not return her at
all.   We were informed that she had met with an injury,
and sent a boy after her, who found her in the suburbs very
seriously injured.   She was injured very badly, so as to
render her almost useless.   She was damaged to the extent
of $150.   The buggy and harness were also very much
damaged; the buggy to the extent of $17.75, and the

harness to the extent of $10. The mare has never been of any account or use since then.

"John H. Holmes testified that he was an officer of the Humane Society; that he had received a notification of a wounded horse having been found in the suburbs of the city, seriously wounded; that he went there and found a roan mare seriously injured, with her right fetlock cut to the bone, and otherwise very badly disfigured; had seen the same mare in Arnot's stable, and seen her coming and going out from that stable very frequently; that at the time he found her, she was unhitched.

"Dr. John Crowley testified that he is a veterinary surgeon; was called to attend a horse belonging to Jesse Arnot; that he found the animal in the suburbs of the city; that she was a roan mare; that he found her seriously injured, having her right fetlock cut, and was otherwise badly bruised; that he had seen her since that time in Jesse Arnot's stable; that he was acquainted with the value of horses, having frequently bought and sold them; that in his opinion when he first saw this mare, she was so seriously injured as to be of no use to the owners, and in fact he told them they had better give her away; that she was removed to Arnot's stable, where he saw her frequently; that while there she had received careful attention, and at this time would be of some little value; leaving out of consideration her speed, he should say she was originally worth in the neighborhood of from $150 to $175."

On this case we are of the opinion that the ruling of the circuit court was erroneous. This ruling probably would not have been made, but for some confusion in the rulings of our supreme court upon the question. In *Perry* v. *Beardslee* (10 Mo. 568), it appeared that the plaintiff had hired a slave to the defendants, who were owners of a steamboat, and that while so in the custody of the defendants, the slave ran away and was lost to the plaintiffs. On this evidence, without more, it was held that the plaintiff could not

recover of the defendants the value of the slave, since, in order to make out a *prima facie* case of negligence, there must at least be something to throw suspicion upon the conduct of the bailee, where the loss is of that character. On a second appeal in the same case (*Beardslee* v. *Perry*, 14 Mo. 88), the court re-affirmed the same doctrine. In *McCarthy* v. *Wolfe* (40 Mo. 520), it appeared that the plaintiff had placed some cattle in the hands of the defendants as an agister, and that some of them had strayed away and became lost. It was held by the court that "the mere fact of the loss, without showing affirmatively that the same was the result of a failure on the part of the defendant to exercise the reasonable care and diligence imposed upon him by the nature of his undertaking, could not make him liable."

An examination of these cases will show that the court in each case decided the question apparently without examining the decisions of other jurisdictions upon the question. Nevertheless, we should be bound to apply to this case the rule there laid down, whatever our own opinion of its propriety might be, if it had not been distinctly denied by the supreme court in the subsequent case of *Wiser* v. *Chesley* (53 Mo. 547). There the plaintiff sued for some money which he had deposited with the defendant, an inn-keeper, for safe keeping. It was argued in behalf of the defendant, that the burden of proof of negligence was on the plaintiff, and *McCarthy* v. *Wolfe* (*supra*), was cited to this point. But the court, per Sherwood, J., said: "The depositor makes a *prima facie* case when he shows a deposit made and a demand and refusal of the thing deposited. The *onus* is then upon the depositary to exonerate himself from the liability which attached when he assumed the custody of the article with which he was intrusted." Aside from the authority of this last case, we are of opinion that it expresses the better rule. This rule, we think, may be broadly stated thus: Where a person be-

comes the bailee of a chattel, and, before the same is restored to the bailor, something happens to the chattel, whether it be loss or damage, such as ordinarily does not happen to a chattel where the skill or diligence which the law requires in the particular kind of bailment is exercised, the bailor, in an action for such loss or damage, is entitled to recover upon merely showing the fact of the bailment, and of such loss or damage during the term of the bailment, unless the bailee shows that such loss or damage took place under such circumstances as exonerate him from liability.   This rule has been laid down by the court of appeals of New York in *Collins* v. *Bennett* (46 N. Y. 490, 494), where it is said to rest upon two reasons : 1. That the facts are within the defendant's peculiar knowledge, and he should therefore prove them.   2. That such an injury does not usually occur without negligence on the part of the custodian of the animal. The former of these reasons we regard as quite cogent in connection with the facts of this case.   The plaintiff had committed the custody of the horse and buggy wholly to the defendant, and he had taken them beyond the plaintiff's view and control.   The plaintiff had no personal knowledge of the circumstances attending the injury ; the defendant presumptively knew all about it.   Surely a rule which would require the party whose situation implies that he has no knowledge of the circumstances immediately attending the loss or injury to come forward and prove such circumstances, and which would allow the party whose situation implies that he has full knowledge of them, to remain silent, would be at once illogical, inconvenient, and unjust.   The object of legal proceedings is to elicit the truth, and in civil cases, the law generally demands the disclosure of the party who knows the facts and who in fairness ought to speak.

The judgment is reversed and the cause remanded.   All the judges concur.