### YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY v. WILEY H. HUGHES.

#### [47 South. 662.]

WAREHOUSEMEN. *Goods destroyed. Fire. Negligence. Burden of proof.*

> In an action against a warehouseman for the value of goods destroyed in a fire which burned the warehouse, the burden is on the bailor-plaintiff, in the absence of proof as to the circumstances of the fire, to show that it resulted from the bailee-defendant's negligence.

FROM the circuit court of, second district, Bolivar county.

HON. SYDNEY SMITH, Judge.

Hughes, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in favor of plaintiff defendant appealed to the supreme court.

The opinion of the court states the facts of the case.

*Mayes & Longstreet,* for appellant.

The court below should have granted the peremptory instruction requested by appellant. The facts indisputably show that appellant held the property solely as a warehouseman, and that while the property was thus held it was destroyed by fire without fault of appellant. The burden of proof was upon appellee, as bailor, to show neglect upon appellant's part. He failed as to this; hence the peremptory instruction asked for by appellant should have been granted. *Prince v. Alabama State Fair Ass'n,* 106 Ala. 340, 17 South. 449, 28 L. R. A. 716; *Knights v. Piella,* 111 Mich. 9.

While it is true that appellant, as a common carrier, contracted with appellee as to transportation of the goods, yet the evidence shows that this obligation upon appellant's part was satisfactorily fulfilled. When appellee left the goods in storage

with appellant, a new obligation, that of warehouseman, arose upon the part of appellant. In other words, appellant had fulfilled its duty as a common carrier of property, and had entered upon an entirely different relationship at the time of the loss by fire.

The court below erred in instructing the jury peremptorily to find for the appellee as to appellant's liability. Even if the appellant's contract as a common carrier had not been fulfilled, but, as a carrier, it still had possession of appellee's goods at the time they were burned, even then the peremptory intruction in appellee's favor would have been improper, because, in such case, the appellant would have received the goods as baggage, had they not been destroyed. And since some of the goods were not, strictly speaking, baggage, and since the company's agent at Boyle did not know the true nature of the contents of the tool chest, the appellant could not legally be liable therefor. *Yazoo etc., R. Co. v. Georgia, etc., Insurance Co.*, 85 Miss. 7, 37 South. 500.

*Jones & Hardee*, for appellee.

Can a bailee for hire excuse himself from liability for loss of the goods entrusted to him, by merely showing that the goods were destroyed by fire? This is the main question in this case. Our court has held that if the circumstances surrounding a fire, in cases such as this, fail to show negligence on the part of the bailee, or want of proper care upon his part, it then devolves on the bailor to turn the scale by some evidence inculpatory of the defendant. The law does not intend to presume negligence. It does make the reasonable requirement of the bailee who fails to return the thing bailed, to show that he cannot return it, and why; and when he discloses fully the fact showing the impracticability of a return because of the destruction of the thing, with the attendant circumstances, and nothing connected with his showing in this respect inculpates him, the plaintiff must show liability or fail in his action. *Meridian Fair, etc., Ass'n*

*v. North Birmingham, etc., Railroad Co.,* 70 Miss. 808, 12 South. 555.

Under the foregoing decision of our court, the instruction in behalf of appellee and the verdict and judgment in the court below were correct. For there was absolutely no showing made by appellant disclosing the "attendant circumstances" of the fire.

FLETCHER, J., delivered the opinion of the court.

The appellee on July 3, 1907, purchased a ticket at Memphis, from the agent of the appellant company for Boyle, and on his ticket two articles of baggage were checked. One was a trunk filled with wearing apparel, and the other was a chest of carpenter's tools. The baggage reached Boyle in safety, and was stored in the station house of the railroad company. Three or four days after the baggage was so stored, appellee and the agent of the company had a conversation, in which it was arranged that appellee should leave his baggage in the appellant's wareroom for an indefinite time, paying storage thereon. The depot and its contents were destroyed by fire some time subsequent to this arrangement, and Hughes sued for the value of his baggage. The court gave a peremptory instruction in behalf of the appellee as to liability, leaving the jury the duty of ascertaining the damages. From a verdict for the appellee, the railroad company appealed.

The declaration in this case contained three counts. The first was framed upon the theory that the liability of the company was that of a common carrier; second, that the compnay was liable as a warehouseman, but had "carlessly" allowed the trunks and contents to be destroyed by fire, on a day named in the declaration; the third count, that the company was liable as a warehouseman, and that the defendant had "wrongfully, carelessly, and negligently failed and neglected to exercise and maintain that degree of care, prudence, and caution which it, as bailee for hire or warehouseman, was bound to exercise and

maintain, wrongfully and inexcusably permitted the said chest and contents to be wholly lost and destroyed, to plaintiff's damage," etc. It is perfectly obvious that no liability rested upon the company as a common carrier, since its duty in that respect had ceased, and by special contract the railroad company had become liable as a warehouseman only. Indeed, appellee from the first placed no reliance in the first count of the declaration. Only one witness testified in the case, the appellee himself. He stated that he saw the trunks in the depot two or three days before the fire which destroyed the depot, and that the agent of the company at Boyle afterwards stated to him, appellee, that the trunks had been burned. The sole instruction given in the case recited: "The court instructs the jury to find for plaintiff, and to assess his damages at such amount as the proof shows the goods lost to have been reasonably worth at the time they were destroyed by the fire which consumed the depot at Boyle." This instruction, as well as the whole course of the trial, assumes that the goods were destroyed in the fire which consumed the depot, and we think this fact may be said to have been fairly established. It is clear, therefore, that the trial was had upon the second count, the one in which it was alleged that the property was destroyed by fire. On the trial the plaintiff showed the value of the articles lost, the delivery to the company, the contract of bailment, and, as we have shown, the fact that the property was destroyed by the fire that consumed the station. No evidence was introduced by the defendant, and there was no testimony from either side as to the circumstances and incidents of the fire. It is merely shown that the baggage was burned, and the railroad company relied upon this fact as a sufficient answer to the charge of nondelivery. The precise and narrow question, therefore, before the court for decision is as to where lay the burden of proof in the case; that is to say, was the fire presumably caused by the negligence of the appellant or was it presumably nonnegligent? Of course, the contract of bailment in this case was for the mutual benefit of the

parties, and the warehouseman is therefore held to the exercise of ordinary care. The question is interesting and somewhat novel in this jurisdiction. We think our conclusion in this matter can best be stated by a consideration of a few authorities.

It appears that the ancient rule was that in all cases where a bailee was sought to be held no presumption of negligence arises on account of the loss of the goods, and the burden of proof is always on the plaintiff to establish that negligence was attributable to the bailee. But by the weight of modern authority this doctrine is substantially modified. It may now be said to be established that, when a bailor shows that goods are delivered to his bailee in good condition and are lost or destroyed or returned in a damaged condition, this fact creates a *prima facie* presumption of negligence; and it thereupon devolves upon the bailee to absolve himself from negligence. But the bailee may acquit himself of the charge of negligence by showing that the loss occurred from a cause which *prima facie* exonerates the bailee from negligence. "Thus, if he proves that the loss was occasioned by burglary, fire, the falling of the warehouse in which the goods were stored, the death of an animal bailed, . . . the burden is again shifted to the bailor to prove the defendant's negligence." 3 Am. & Eng. Ency. of Law (2d. ed.), 750.

Among the cases cited to support this declaration of the text is *Meridian Fair & Exposition Association v. North Birmingham Street Railway Co.,* 70 Miss. 808, 12 South. 555. In that case the fair association had become responsible to the owners for the safe return of a balloon borrowed by one Fisk, an aeronaut. This balloon while in the air took fire in some inexplicable manner, and was destroyed. On the trial Fisk, the only man who could have explained the accident, was not examined, and the spectators who testified could only say that the balloon suddenly took fire from a cause of which they were ignorant. The court says: "When a bailee in an action for nonreturn of an article shows that it was destroyed by fire under circum-

stances fully disclosed, and not suggestive of any want of due care, it devolves on the bailor seeking to hold him responsible to turn the scale by some evidence inculpatory of the defendant. The law does not intend or presume negligence. It does make the reasonable requirement of the bailee who fails to return the thing bailed to show that he cannot return it, and why; and, when he discloses fully the fact showing the impossibility of a return because of the destruction of the thing, with the attendant circumstances, and nothing connected with his showing in this respect inculpates him, the plaintiff must show liability or fail in his action." It is true that the court observes that the circumstances were "fully disclosed," and that the rule there stated applies when the "attendant circumstances" are shown, but an examination of the facts of the case and the authorities upon which the decision is based convinces us that the mere fact of the property being destroyed by fire, in the absence of explanaion, *prima facie,* acquits the bailee of the charge of negligence; for in the *Meridian Fair Association* case the only person having knowledge of the facts was not examined, and the evidence of the spectators threw no sort of light on the question of negligence. Nothing was really disclosed in the proof except that the balloon was burned, and nobody knew how or why. The authorities cited by the court in the case throw much light upon the question. Reference is made to the note to *Schmidt v. Blood,* 9 Wend. (N. Y.) 268, 24 Am. Dec. 143. The rule is thus tersely stated on page 153 (9 Wend.) of the notes: "The doctrine deducible from these authorities seems to be this: A bailor seeking to recover from a warehouseman for the nondelivery of goods, or an injury thereto, must prove negligence. When he shows that the goods were not delivered on demand, or were delivered in a damaged condition, he has made a *prima facie* case. If the defendant accounts for the nondelivery or injury by showing that the goods were stolen or were lost or damaged by fire, or in any other manner consistent with the exercise of ordinary care on his part, the plaintiff's *prima*

*facie* case is overcome, and he must prove positive negligence occasioning the loss." It will thus be seen that the court considers that a loss by fire may be perfectly consistent with the the exercise of ordinary care on the part of the bailee. In the note found on page 26 of Schouler on Bailments, it is said: "But if the bailee, under such circumstances, shows some cause of loss or damage to the thing, such as ought legally to excuse him, he need not go further and prove affirmatively that no negligence on his part operated in producing that cause; but may rest upon a showing which, on the face of it, leaves him sufficiently exonerated. The burden now shifts back to the plaintiff bailor, who is to overcome, if he can, the bailee's *prima facie* exoneration." This statement rests upon the case of *Memphis, etc., R. Co. v. Reeves;* 10 Wall. 176, 19 L. Ed. 909. It is true that this last-cited case was the case of a common carrier escaping liability on account of an act of God, and equally true that fire is not one of these causes, but the principle is applicable to the case at bar, since the question there being treated is one of presumptions. We can find no clearer or more accurate statement of what we conceive to be the true rule than the one made by the great Judge MCCLELLAN in *Higman v. Camody,* 118 Ala. 267, 20 South. 482, 57 Am. St. Rep. 33, in which he says: "In an action by a bailor against a bailee for the destruction of or injuries to the chattel while held under the bailment through the negligence of the latter, the burden of proof shifts from one side to the other, and rest with plaintiff or the defendant, upon the development of the circumstances in the evidence. It is, of course, on the plaintiff to show the bailment, that the defendant took the property under it, and returned it in a damaged condition, or did not return it at all. It is also, it seems, with him to show the condition of the chattel when it was delivered to the defendant. If the property was in good condition for the uses of the bailment, and it is not returned, or returned in an injured state, or if though there be an infirmity or defect in the chattel, but the injury sustained by it is not of a character at-

tributable to such defect (as, for instance, where a leaky boat is let, and is injured by an explosion of gunpowder), the burden is on the bailee; since in either of the cases the injury would not have happened in the ordinary course of things had he been duly prudent and diligent, not, indeed, to acquit himself of all negligence, but to show a cause producing the injury which *prima facie* did not arise or result from or operate on account of a want of ordinary care on his part. This being done, the burden shifts back to the plaintiff to affirmatively show some causal negligence on the part of the defendant. To illustrate: The hirer of a boat loses it in a storm of sufficient severity to have probably caused the loss without fault on his part. He acquits himself of negligence *prima facie* by showing these facts, and throws the onus on the latter to prove that, notwithstanding the storm, the boat would not have been lost but for defendant's negligence in going out in the storm, or, being out, his want of care and diligence in handling the boat; and in such case it is with the plaintiff to reasonably satisfy the jury by a preponderance of evidence that not the storm alone, but the failure of the defendant to act with prudence and diligence in view of the storm, caused the loss." Some of the authorities do not subscribe to the doctrine that there is any shifting of the burden of proof, but this variance in logical method does not affect the result so far as practical ends are concerned.

A typical case of the sort just referred to is *Claflin v. Meyer,* 75 N. Y. 260, 31 Am. Rep. 467. It is there said: "It will be seen as the result of these authorities that the burden is ordinarily upon the plaintiff alleging negligence to prove it against a warehouseman who accounts for his failure to deliver by showing a destruction or loss from fire or theft. It is not, of course, intended to hold that a warehouseman, refusing to deliver goods, can impose any necessity of proof upon the owner by merely alleging as an excuse that they have been stolen or burned. These facts must appear or be proved with reasonable certainty. Nor do we concur in the view that there is in these .

cases any real 'shifting' of the burden of proof. The ware-houseman, in the absence of bad faith, is only liable for negligence. The plaintiff must in all cases, suing him for the loss of goods, allege negligence and prove negligence. This burden is never shifted from him. If he proves the demand upon the warehouseman and his refusel to deliver, these facts, unexplained, are treated by the courts as *prima facie* evidence of negligence; but if, either in the course of his proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the warehouseman." The rule has been accepted in a great number of jurisdictions. Thus it has been held in California: "A *prima facie* case of negligence is made out against a warehouseman who refuses to deliver property stored with him upon proof of demand and refusal. Such evidence alone is sufficient to show a conversion by him. But, if it appear that the property, when demanded, was consumed by fire, the burden of proof is then on the bailor to show that the fire was the result of the negligence of the warehouseman." *Wilson v. So. Pac. R. Co.,* 62 Cal. 164.

It has been held in Missouri: "The petition does not allege any negligence on the part of defendants, but alleges delivery of the goods to the defendants, and a failure to deliver on demand. Therefore, when plaintiff showed the delivery of the malt to defendants for storage under a contract with them for hire, and the failure by defendants to deliver on demand, it made out a *prima facie* case of negligence on the part of defendants; but, when the defendants showed that the goods were lost and damaged by the act of God, the burden shifted to the plaintiff to establish that the loss or damages was due to the want of the exercise of ordinary diligence and care in taking care of, and in failing to remove, the malt to a place of safety before the collapse. In *Lancaster Mills v. Merchants' Cotton Press Co.,* 89 Tenn. 1, 14 S. W. 317, 24 Am. St. Rep. 586, it is said: 'The rule, as we understand it, is that the burden of proof is

upon the bailor to prove the contract and delivery of goods, then upon the bailee to show their loss and the manner of the loss. The burden then shifts to the bailor to establish that the loss was due to negligence.' *Runyan v. Caldwell,* 7 Humph. (Tenn.) 134. In *Wiser v. Chesley,* 53 Mo. 547; *Kincheloe v. Priest,* 89 Mo. 240, 1 S. W. 235, 58 Am. Rep. 117; *Taussig v. Schields,* 26 Mo. App. 318, and *Arnot v. Branconier,* 14 Mo. App. 431, exemption from liability by the bailee was not claimed upon the ground of the intervention of irresistible force, and those cases are in that respect distinguishable from the case at bar, and not in conflict with what has been said in this case." *American Brewing Association v. Talbot,* 141 Mo. 674, 42 S. W. 679, 64 Am. St. Rep. 538. That the "irresistible force" in the case there considered happened to be such as arose from an "act of God" canot affect the principle. In the case of *Stewart v. Stone,* 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215, the facts and the holding of the court are thus succinctly stated in the syllabus: "Plaintiff and his assignors entered into an agreement with defendant, by which the latter agreed to manufacture cheese and butter from milk delivered at his factory by the former, to sell the products, and distribute the proceeds in the manner stipulated. The factory was thereafter destroyed by fire, and a quantity of milk, butter and cheese thereby lost. In an action to recover the amount of the loss, held, that the contract was one of bailment, and defendant assumed simply the duty to exercise ordinary care to protect and preserve the property; that the burden was upon plaintiff to show a failure to perform that duty; and that no presumption of negligence arose from the fact that the loss resulted from the fire." We call special attention to the significant utterance of the court that the destruction of property by fire raises no presumption of negligence. *Cumins v. Wood,* 44 Ill. 416, 92 Am. Dec. 189, is an Illinois case. In that state there has always been an emphatic assertion of the rule that the burden of proof is upon the bailee to acquit himself of negligence when goods

properly stored have been destroyed; but in this case there is a clear recognition of the further rule that, when the loss is shown to have resulted from fire, the burden has been met, and it therefore devolves upon the plaintiff to show that the fire was the result of defendant's negligence. See, also, 16 Am. & Eng. Ency. Law (1st ed.), 448; Jones on Pledges, §§ 411, 413; *Lamb v. Camden & Co.,* 46 N. Y. 271, 7 Am. Rep. 327; *Prince v. Alabama State Fair,* 106 Ala. 340, 17 South. 449, 28 L. R. A. 716; *James v. Orrell,* 68 Ark. 284, 57 S. W. 931, 82 Am. St. Rep. 293; *Knights v. Piella,* 111 Mich. 9, 69 N. W. 92, 66 Am. St. Rep. 375, and note. Cases which seem to announce a contrary rule will be seen, we believe, to be readily distinguishable on their particular facts. *Shafer v. Lacock,* 168 Pa. 497, 32 Atl. 44, 29 L. R. A. 254, a Pennsylvania case, may be taken as an illustration. But in that case the facts show that the fire resulted from the negligence of the workmen, who in repairing a roof had permitted sparks to escape from a fire pot used by them. The holding rests upon the statement in Shearman & Redfield on Negligence, §§ 59, 60: "When a thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." But in the instant case it cannot be said that the fire which caused the injury was an agency under the control of the defendant company or any of its agents or employes. Some of the authorities, very properly, as we think, in discussing the question of presumptions, attach importance to the consideration that negligence will not be presumed in a case where the fire destroyed the property of the bailee, as well as the goods deposited for safe-keeping, and, applying this test, it is evident here that the railroad company lost its depot in the fire which destroyed the baggage, and presumably its loss was considerable. Learned counsel for appel-

lee do not call our attention to any authority except the *Meridian Fair Association case,* which we have considered, *supra,* in support of their contention. Indeed, they seem to concede that the weight of authority in other states is against him. But he asserts that reason and common sense require that the person in possession of evidence should be compelled to produce it. This argument is not convincing in the light of the overwhelming weight of authority the other way. Indeed, there ought to be no difficulty on the part of the plaintiff in showing something of the origin and circumtances of this fire. The agent, or whoever was in charge of the station, is doubtless available as a witness. We intimate nothing as to the quantity of proof as to negligence which will suffice to warrant the submission of this case to the jury, or which will call for an explanation by the defendant. We only hold that, in the absence of proof as to the circumstances of this fire, the defendant was improperly held to be *prima facie* negligent, since the destruction of property by fire is entirely consistent with ordinary care.

*Reversed and remanded.*