TERRY *v.* NATIONAL SURETY CO.

(Division B. Jan. 2, 1933.)

[145 So. 111. No. 30282.]

W. E. Morse, of Jackson, for appellant.

Flowers, Brown & Hester, of Jackson, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Hinds county against appellee on a "personal hold-up" insurance policy to recover five hundred dollars, the value of a diamond stud of which appellant claims to have been robbed. He alleged that the policy insured against such loss. The trial was had on the pleadings and evidence, resulting in a directed verdict and judgment in appellee's favor. From that judgment appellant prosecutes this appeal.

The policy sued on insured appellant against loss of the stud by robbery, and defined robbery in the following language: " 'Robbery' as used in this policy shall mean a felonious and forcible taking of property from the person of the assured or from the person of any of the in-

dividuals hereinbefore described as covered by this policy, accompanied by bodily injury to the person from whom the property is taken, or by putting such person in fear of bodily injury."

The evidence, viewed most strongly in appellant's favor, was substantially as follows: When he lost the stud he was attending a football game at Starkville between the University of Mississippi and the A. & M. College teams. In the evidence the University of Mississippi team is referred to as the Ole Miss team, and the A. & M. College team as the A. & M. team. After the game, the Ole Miss supporters rushed on the south goal post to take it. A fight ensued, the Ole Miss students were trying to take the goal post and the A. & M. students were trying to prevent them from doing so. Appellant, who was a university student, had classmates and fraternity brothers in the fight. They were outnumberd by the A. & M. students. The later were wielding sticks. There was an officer present, who was in front of appellant. The officer became excited, and threatened to use his gun and started to pull it out. Appellant felt some one pushing him from behind. He did not know who it was. Appellant and others were anxious to get into the crowd where the fight was going on. While he was pushing his way in, he (to use his own language) "noticed a jerk and I started to turn around, and whoever it was had his elbow over my shoulder, and I couldn't turn, and when I turned his elbow hit me right here (indicating)—so I knocked him off with my right elbow and evidently hit him in the stomach, and started to turn, and this little officer was just about to pull his gun, and some one said, 'Grab him,' and four or five of us grabbed him and took his gun away from him, and that is how my attention was diverted, and it never occurred to me again about this jerk till I met Bob a minute or two minutes later, after they stopped the fight and dispersed the crowd." His friend, Bob, asked him where his stud was. Appellant then for the first

time noticed his tie had been displaced and his stud was gone. His tie was pulled around to one side and was torn both in front and at the back, leaving a hole all the way through, including the lining.

It will be observed that robbery as defined in the policy is the felonious and forcible taking of property from the person of the insured "accompanied by bodily injury to the person from whom the property is taken, or by putting such person in fear of bodily injury." Appellant received no bodily injury, unless it can be said that the mere disarranging and tearing of his tie was bodily injury. We do not think it was. Injury to his wearing apparel alone did not constitute bodily injury in the meaning of the policy. The term "bodily injury" used in the policy means injury to the person. Appellant did not claim that he was in fear of bodily injury. On the contrary, he admits that he did not know that the stud had been taken from his tie until the fight was over and he had left the field.

It is very doubtful whether the evidence was sufficient to show a mere theft of the stud. The inference that during the fight appellant's tie was torn, and as a result the stud fell to the ground and was never found by any one, appears to be as reasonable as the inference of theft. Certainly the evidence means nothing more than the mere snatching of the stud by some one in order to steal it. There is some authority that such a snatching without further indication of violence is robbery, but the great weight of, and better reasoned, authority is to the contrary. Where property is snatched so quickly (as was done in this case) as to allow no time for resistance it is not robbery. Where there is neither actual violence nor intimidation, the act of picking a pocket is not robbery. The force used in the stealthy abstraction of property from the pocket of the victim, or in the open rifling of the pocket of one unconscious, is not the character of violence essential to robbery. 54 C. J., secs.

40 and 43, pp. 1022-1025, where the authorities are collated.

It follows from these views that the court committed no error in directing a verdict for appellee.

Affirmed.