## Dixon *v.* State.

(Division A.  April 23, 1934.)

[154 So. 290.  No. 31039.]

Broom, Bilbo & Shipman, of Jackson, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **Stuart C. Broom,** for appellant, and by **W. D. Conn, Jr.,** for the state.

**Cook, J.,** delivered the opinion of the court.

Appellant was jointly indicted with his wife, Alex Dixon, and E. J. Anderson, the indictment, omitting the

formal parts, charging that they ''did willfully, unlawfully, feloniously, and forcibly snatch, take, steal and carry away from the person of Homer Solomon, the sum of thirty dollars of current and lawful money of the United States of America, the exact denominations of which are to the grand jurors unknown, the money and personal property of the said Homer Solomon, against the peace and dignity of the state of Mississippi.'' The appellant and his wife were jointly tried on this indictment, and a verdict was returned acquiting the wife, but finding the appellant ''guilty as charged in the indictment.'' Throughout the record the charge against the appellant is denominated as one for grand larceny, and the judgment of arraignment and conviction recites that the defendants were arraigned on an indictment charging them with grand larceny. Upon this verdict the appellant was sentenced to the state penitentiary for three years, and from this conviction and sentence this appeal was prosecuted.

The proof offered by the state is to the effect that the transaction which resulted in the snatching of the money from Homer Solomon began with a confidence game attempted to be perpetrated in the manner hereinafter described.

The parties were all negroes. Homer Solomon lived on a farm several miles from Prentiss, Mississippi. The appellant and the two parties who were jointly indicted with him were residents of Magee, Arkansas, and some time in November, 1932, while traveling through Mississippi, they stopped at Prentiss. There they met the said Homer Solomon, and while engaged in conversation with him, the appellant pretended to find a purse on the street and offered to divide the contents thereof with the said Anderson and Solomon. They went to the depot nearby, and there, after examining the purse, the appellant reported that it contained a one hundred dollar bill and asked Solomon to change the bill so that it might be divided. Solomon was unable to change such a bill,

and thereupon the appellant stated that he would go to Dr. Everett, a physician for whom he claimed to work, and get him to change the bill and divide the money. He went away, and shortly afterwards returned and reported to Solomon and Anderson that Dr. Everett had found that the purse contained two one thousand dollar bills and five hundred dollars in war stamps; that the doctor would retain the war stamps and divide the money between them, but, before doing so, he required that each of them show that he had enough money to live on for thirty days without using any part of his share of the money so divided. Solomon had no money, but the appellant insisted that he borrow from a merchant with whom he traded. Solomon went away and borrowed thirty dollars, and reported to the appellant and Anderson that he had done so. They insisted that thirty dollars was not enough, and, after some further conversation, the appellant asked Solomon to change a twenty dollar bill. When he took the thirty dollars from his pocket to make the change, Anderson caught Solomon and pinned his arms to his body, while the appellant snatched the money from his hand. Anderson then threw Solomon down an embankment, and he and the appellant escaped in their automobile, which was standing nearby. Appellant admitted that they procured thirty dollars from Solomon, but claimed that they procured it by gambling in a game called "Georgia skin game."

The state also offered as a witness Dr. Everett, who, over the objections of the appellant, testified that the appellant did not consult him about the purse or the division of the contents thereof, and that at the time of the alleged theft he had never seen the appellant.

All the evidence in reference to the finding of a purse and the proposed division of the contents thereof was admitted over objections of appellant, and the admission thereof is assigned as error. This evidence was admissible for the purpose of developing the entire

scheme devised by them to get money into Solomon's possession, and then get it away from him either by fraud or force. Furthermore, this evidence was admissible as being a part of the res gestae under the rule that "continuous acts or a series of events, especially when closely connected in point of time, which lead up to and are necessary or clearly helpful to a correct understanding of the main transaction—which tend to explain and elucidate the conduct and purposes of the parties—are as much of the res gestae as the direct act itself, and are admissible as a part of the transaction." McCormick v. State, 159 Miss. 610, 132 So. 757.

The testimony of Dr. Everett was admissible for the purpose of showing the false and fraudulent character of the scheme devised to secure possession of Solomon's Money.

At the conclusion of the state's evidence, the appellant moved to exclude the evidence and direct an acquittal on the ground of a variance between the proof and the allegations of the indictment, the contention being that the proof shows that the crime committed, if any, was robbery, while the indictment charged the appellant with the constituent offense of grand larceny.

Although it is contended on appeal that the indictment charges robbery under section 1126, Code 1930, which defines robbery as the felonious taking of the personal property of another, in his presence or from his person and against his will, by violence to his person, or by putting such person in fear of some immediate injury to his person, yet it is clear that the indictment was intended, and treated throughout the trial in the court below, as one for grand larceny.

In the case of Terry v. National Security Co., 164 Miss. 394, 145 So. 111, 112, it was held that "where property is snatched so quickly . . . as to allow no time for resistance it is not robbery." In the case at bar, the indictment does not charge that the snatching was done violently, or by violence to the person of the one from

whom the money was taken, but merely charges that it was forcibly snatched. Property may be snatched from a person by another without violence being done to the person of the one from whom it is snatched; and forcible snatching would not constitute robbery unless there was resistance or time for resistance. But without here deciding whether the indictment in question is sufficient to charge robbery, it is undoubtedly sufficient to support a conviction for grand larceny, and the appellant cannot complain of the variance between the proof and allegations of the indictment.

The proof was sufficient to support a conviction of robbery upon a proper indictment therefor, and the judgment and conviction for a lesser felony, which is a necessary constituent element of the crime of robbery, will bar any future prosecution for the greater offense based upon the same facts. 16 C. J. 276; Moore v. State, 71 Ala. 307; Floyd v. State, 80 Ark. 94, 96 S. W. 125; State v. Lewis, 9 N. C. 98, 11 Am. Dec. 741. By virtue of our statute, section 1192, Code 1930, the acquittal or conviction in a court of a justice of the peace or a county court of a misdemeanor is not a bar to a prosecution for a felony in the same matter; but we have no statute preventing the conviction of a felony from being a bar to a prosecution on the same facts for the major offense of which the said felony is necessarily a constituent element.

The judgment of the lower court will therefore be affirmed.

Affirmed.