EDWARDS HOTEL CO. *v.* TERRY.

(Division B. March 27, 1939. Suggestion of Error Overruled June 5, 1939.)

[187 So. 518. No. 33605.]

Green, Green & Jackson, of Jackson, for appellant.

W. H. Watkins, Jr., of Jackson, for appellee.

**McGehee, J.,** delivered the opinion of the court.

As an invited guest of the Jitney-Jungle Stores and McCarty-Holman Company, the appellee attended an annual banquet and dance tendered the employees of these companies one evening at the Edwards Hotel in Jackson, when his automobile was stealthily and feloniously taken and carried away from the hotel's free parking lot, and

thereafter wrecked, damaged, and rendered almost worthless by the act of a stranger who came on the parking lot from the direction of the hotel building at about 1 o'clock in the morning—the approximate hour for the closing of the entertainment—and called for the car, accurately describing it to the attendant in charge by giving him the make, model, and color, as being a 1936 model, grey Plymouth Sedan; lead the way to its location on the crowded lot; examined the license tag number; further assured the attendant of the correctness of the identification by mentioning some dent or bent place on the car near the license tag; showed impatience and resentment because of the cautious attitude of the attendant when he tried to make sure that the car was being taken by the true owner; and who then got in it and drove away. The key had been left in the ignition, at the suggestion of the attendant, when the appellee parked the car upon his arrival at the lot about 8 o'clock that evening, in order that it might be moved about on the parking lot, "as was frequently necessary" according to an allegation made in the declaration. This was done under a rule adopted and enforced by the "gas man" who had no connection with the appellant hotel company, except as lessee of a part of the lot where he was operating a filling station.

Except for the length of time that the attendant (who was a colored boy working on the lot only for the tips that he might receive from car owners parking there) testified that he had been assisting and directing the parking of the cars, there was but little substantial evidence, if any, that he was in fact the servant of appellant, he having stated that he received his orders and instructions mostly from a Mr. Williford, the operator of the Hines Motor Company and the filling station; and who also said that the "gas man" was the one who put him to work there. He did say, however, that the assistant manager of the hotel knew that he was working on the lot and gave him instructions merely to the extent

of telling him not to charge guests for parking their cars there.

However, for the purpose of this decision, we may assume that the attendant was employed as a servant of the appellant hotel company; and, from this premise, determine whether the relationship of the appellant to the appellee was that of innkeeper and guest, bailor and bailee, or landowner and invitee, so as to ascertain the degree of care required for the safekeeping of the car in question.

The declaration alleged that appellee took advantage of the parking lot "as an invitee," but it also contained other allegations which, if established by the proof, would tend to create the relationship of innkeeper and guest. The proof, however, in fact disclosed that the Jitney-Jungle Stores and McCarty-Holman Company, as hosts of their employees, arranged with the hotel management for the use of the convention hall, mezzanine floor, cloakrooms and certain other facilities in connection therewith; that a separate arrangement with the U-Drive It Garage was made for the storing and safekeeping of the cars of the banquet guests on that evening; and that it was not contemplated by the hosts of the appellee that the hotel was obligated, under this contract at least, to furnish the parking space. It appears however that neither appellee, nor his wife who was an employee of Jitney-Jungle, were advised of this separate arrangement. He therefore had the right to park his car on the free parking lot as a guest of the guests of the hotel, according to the usual custom and practice acquiesced in by the hotel as to anyone having occasion to visit a guest of the hotel for any purpose.

From this it does not necessarily follow that the relation of innkeeper and guest between the hotel and appellee was created in the sense of imposing the common law liability of an innkeeper, such as made an innkeeper an insurer of the property of the guest except as to a loss occasioned by an act of God or the negligence of the

guest himself. That is to say, there did not exist in the case at bar those reciprocal rights and liabilities between appellant and appellee upon which the strict common law liability of innkeeper and guest could be predicated. Appellee was not responsible to appellant for the price of his plate at the banquet, nor did appellant acquire a lien upon any property of the appellee for the enforcement of its collection. Such liability for compensation to the hotel rested alone upon the hosts of appellee. Neither was the appellant required to serve appellee at the banquet as a member of the general public. None of the guests of the hotel that evening were entitled, as such, to be present at the banquet. Only those were entitled to attend who were especially invited by the Jitney-Jungle Stores and McCarty-Holman Company. It was held in the case of Amey v. Winchester, 68 N. H. 447, 39 A. 487, 39 L. R. A. 760, 73 Am. St. Rep. 614, that a guest attending a banquet, where he lost his hat, was not the guest of the operator of the inn, but was merely the guest of the club giving the banquet; that one who provided a banquet as caterer under a contract with the club, without any claim or lien for compensation against its guests, was not an innkeeper as to such guest. As opposed to the rule announced in that case, the appellee cites the more recent case of O'Malley v. Penn Athletic Club, 119 Pa. Super. 584, 181 A. 370, wherein liability was imposed upon the Penn Athletic Club which furnished a banquet at the instance of the League of the Sacred Heart, and at which banquet the plaintiff, as the guest of the League of the Sacred Heart, lost her expensive fur coat, which disappeared from the cloak-room furnished by the Penn Athletic Club as one of the facilities for use in connection with the banquet hall. A careful examination of the opinion in that case reveals however that the liability was predicated by the court upon the negligence of the athletic club, and not upon the theory that the club was an innkeeper as to the plaintiff and liable as such. Moreover, in that

case the club failed to satisfactorily account for the non-delivery of the coat. It does not appear whether there was a conversion of the coat by some servant or employee of the club or whether it was stolen by some third person. Its disappearance was wholly unaccounted for by any proof offered by the club, and the fact that it may have been stolen by some third person was not disclosed by the proof offered on behalf of the plaintiff, as was done in the case at bar. It was shown that the attendants at the cloak-room took special notice of the fact at the time the coat was checked that it was quite expensive and valuable; and the court held that consequently a greater care was required than would ordinarily have been required in regard to an article so checked, especially where troupers or entertainers were using the cloak-room as an avenue of passage to and from the stage. As heretofore stated, the liability was predicated solely upon negligence, and there was no holding by the Court in that case that the relation of innkeeper and guest existed as between the athletic club and the plaintiff.

Other authorities are relied upon by appellee to render the appellant liable at all events in the case at bar, and especially that of Todd v. Natchez-Eola Hotels Company, 171 Miss. 577, 157 So. 703, 705. In the Natchez Hotels case, however, the plaintiff was a registered guest of the hotel for the night in its capacity as innkeeper, and his automobile was stolen by the servant of the hotel company in charge of its free parking lot, and the Court held that the hotel was required to at least ''take reasonable care of the property and to safely keep it, so far as its own act was concerned.'' That case is therefore not controlling here; and it is unnecessary that we review the authorities and decide the specific question here as to whether the appellee occupied the relation of a guest to the appellant hotel by reason of the fact that his attendance and that of the other guests at the banquet resulted in a mutual benefit accruing to them and to the hotel, since section 5108 of the Code of 1930, by express

language, defines the liability of an innkeeper to be that only of a depository for hire. The liability here, by virtue of the provisions of this statute, the hotel not being an insurer, must be founded, if at all, upon a failure to exercise that ordinary care required of a bailee for hire as to the safekeeping of the car in question; unless appellant, indeed, was only a gratuitous bailee of the car at its free parking lot at the time complained of and liable only for gross negligence.

But it is immaterial to the decision of this case whether the appellant was a bailee for hire or a gratuitous bailee; or whether the appellee was merely an invitee. In our opinion there was no substantial evidence sufficient to go to the jury tending to show a failure on the part of the appellant hotel company, or its alleged servant, to exercise ordinary care for the safekeeping and return of this automobile. The evidence offered by appellee himself disclosed that the failure to return the car to him was due alone to the fact that it was stolen. The rule is that when this fact is disclosed either by the evidence of the bailor or by that offered on behalf of the bailee the burden is then upon the bailor to show that the theft was occasioned by the negligence of the bailee defendant. The prima facie case made by proof of delivery and failure to return the bailed property disappears upon proof of loss by fire or theft. Yazoo & M. V. R. Company v. Hughes, 94 Miss. 242, 47 So. 662, 22 L. R. A. (N. S.), 975, and the other authorities therein reviewed. Also 8 C. J. S. Bailments, section 50, pages 342-346, inclusive. And the defendant is entitled to the verdict unless the plaintiff goes forward and proves that the theft was due to defendant's negligence. Then too, the declaration charges that ''the defendant negligently, wantonly and through gross disregard of the rights of the plaintiff . . . permitted someone other than plaintiff . . . to take the car,'' etc. The case was submitted to the jury on the issue of negligence, and that alone, and not upon the theory that the appellant owed the strict common law

duty of an innkeeper in the premises, so as to be liable as an insurer.

The sole question is, therefore, whether the servant of the hotel company, as attendant at the parking lot, failed to exercise ordinary care to prevent the theft of the automobile. We think that he acted as an ordinarily prudent person would have done under the same circumstances. Should he have called the police and run the risk of subjecting the hotel company to damages for false arrest or imprisonment of the person claiming the car, at a time when he, the servant, had good reason to believe, and no doubt, for ought that appears in the record to the contrary, did honestly and sincerely believe, that the person then taking the car away was its owner? Or, can it be said that he failed to exercise ordinary care in not recognizing this person as not being the true owner, under the circumstances hereinbefore mentioned, especially in view of the plausible assurances that were given by such person to him in that behalf, and where the record shows that the owner arrived at the lot in the first instance after night and parked the car at a busy hour while the others were likewise being parked, when considered in connection with the fact that the attendant could have reasonably assumed that there might be more than one car of the same model and color parked on the lot? The proper conclusion to be reached under all of the facts in evidence is that when appellee left his car on a free parking lot, instead of in a garage, where he knew it to be neither customary nor required that hotels maintain a system of giving identification checks for cars, he necessarily assumed some risk that the car might be stolen without fault or negligence on the part of the owner, of such lot, and consequently without resultant liability to him therefor.

If there was any negligence at all shown in this case it consisted of the fact that the attendant suggested to the owner that the key be left in the ignition; and the undisputed testimony was that this was done in compliance

with an order or rule of the filling station operator, who had part of the lot leased, and who primarily, if not altogether, controlled the physical conduct of the attendant in the performance of his duties. However, the declaration alleged as heretofore stated that "it was frequently necessary to move the cars about on the lot;" hence the necessity for the rule as to the owner not taking away the key.

It is next contended, although not alleged in the declaration, that the judgment here appealed from may be sustained on the theory that there was a misdelivery of the bailed property, wherein liability may be imposed without regard to negligence and notwithstanding that the bailee may have acted in good faith. This is the law where a misdelivery—that is to say, a delivery by some affirmative action on the part of the bailee to a third person known not to be the owner—is made, or where, as held under some of the authorities, the property is delivered to a third person through a mistake. But that principle cannot be invoked here for two reasons: (1) the suit is not predicated upon a misdelivery, but rather upon the "negligent, wanton and gross disregard of the plaintiff's rights in permitting someone other than the plaintiff to take the car," through a trespass amounting to larceny; and (2) because there was neither a delivery nor a misdelivery shown by the proof. The car was taken, stealthily and feloniously, from the parking lot while the attendant was still endeavoring to make sure that the person taking it was the true owner. He gained possession without any affirmative action on the part of the bailee. The taking was no less by theft than if the attendant had not known of it at all. One may take the purse and money of another in the presence of either its bailee or owner, when done without resorting to violence or putting in fear, and be guilty of larceny. Dixon v. State, 169 Miss. 876, 154 So. 290; Lewis v. State (Miss.), 176 So. 600. If the possession of personal property, as in the case at bar, is obtained fraudulently with

the felonious intent existing at the time to deprive the owner thereof, and such intention is carried out, a theft is thereby committed. Akroyd v. State, 107 Miss. 51, 64 So. 936.

We are therefore of the opinion that the rule here applicable is that found stated in the case of Yazoo & M. V. R. R. Company v. Hughes, supra, and the other authorities therein cited; and since it was clearly shown by the testimony, without conflict, that the alleged servant of appellant acted in the utmost good faith and in the exercise of more than ordinary care and caution in his efforts to determine the bona fides of the claim asserted by the person who, as subsequent events disclosed, stole the automobile in question, the charge of negligence against the appellant was not sustained by the proof; and this is true without regard to whether the hotel was a bailee for hire or a gratuitous bailee of the car at the parking lot on the occasion in question, or whether the lighted sign at the entrance to the lot "we are not responsible for cars or articles left in cars" had any legal efficacy, and in regard to the effect of which sign we express no opinion, the authorities being in conflict thereon as to a gratuitous bailee, and the decisions of the question being unnecessary to the issue here involved, regardless of whether the appellant was a bailee for hire or a gratuitous bailee.

The requested peremptory instruction for the appellant hotel company should have been given.

Reversed and judgment here for appellant.