SMITH *v.* FARMERS GINNING ASS'N.

(Division A.   March 17, 1947.)

[29 So. (2d) 663.   No. 36374.]

574

**R. Leon Bass,** of Belzoni, for appellant.

**W. D. Womack**, of Belzoni, for appellee.

Argued orally by **R. Leon Bass**, for appellant.

**McGehee, J.,** delivered the opinion of the court.

On October 6, 1944, the appellant, John Smith, had a bale of cotton ginned at Belzoni by the appellee, Farmers Ginning Association, A.A.L., (Agricultural Association Law, Chapter 5, Title 19, Code 1942), and was given a gin ticket therefor, which contained this notation: ''Not responsible for cotton left at gin.'' The bale of cotton was left on the gin yard among five or six hundred other bales, and was never accounted for. This suit was brought to recover the value thereof. There was a directed verdict in favor of the defendant, and the plaintiff appeals.

Notwithstanding the notation on the gin ticket hereinbefore quoted, we are of the opinion that the proof in the case was sufficient to show a verbal understanding between the Gin Company and the plaintiff, after the delivery of the gin ticket to him, that the latter was to come back later and get the compress warehouse receipt and cotton sample; that ordinarily and under normal conditions the Gin Company would deliver the ginned cotton to the compress for the customer, get a receipt therefor and a sample of the cotton, and later deliver them to the customer on his return to the gin therefor; that the plaintiff returned about a week later and was told that the cotton ''wasn't sent off and to come back again''; and that he returned on two other occasions soon thereafter, when

he was told that if he could find the bale of cotton they would still try to get it into the compress, but it was conceded that "it was impossible to find a bale among 500 or 600 bales."

We think that, therefore, since the bale of cotton was left at the gin under the foregoing circumstances in the first instance, and it was impossible for plaintiff to have found it later to take it to his home, his failure to do so did not of itself relieve the defendant of responsibility as a bailee.

The defendant accounted for its failure to place the cotton in the compress by showing that the same was overcrowded to such an extent that it could take only about fifty to one hundred bales per week, and that the plaintiff knew of this condition. But the defendant otherwise failed to account for its failure to safely keep the bale of cotton on the gin yard or elsewhere for its customer, and failed to show that it exercised the degree of care required in order to do so.

When the President of the Gin Company was asked what effort he made to locate this bale of cotton, his answer was that he checked the books of the compress at Belzoni and at the other compresses to which the Gin Company had shipped cotton, in order to try to find this and other cotton that had been lost. He was then asked, "'Do you know of anything that you could have done that you didn't do—" He was then interrupted by the Court and the question was withdrawn. He had already testified about the defendant's custom of making a charge for handling the cotton on the gin yard, and he was then asked:

"Q. What did the handling consist of? A. Taking care of the cotton. Quite a good deal of it had to be hauled off to other lots and stored. Extra handling was not a part of the contract.

"Q. Does that mean hauling to the compress? A. Handling it on the yard and other lots."

In other words, there was no proof on behalf of the Gin Company that it made any effort to locate this bale of cotton either on the gin lot or on any other lot to which it may have been carried, so as to supplement the inquiry made at compresses.

In the case of Yazoo & M. V. R. Co. v. Hughes, 94 Miss. 242, 47 So. 662, 22 L. R. A. (N. S.) 975, it was held that when a bailor shows that goods are delivered to his bailee and are lost or destroyed, this fact creates a prima facie presumption of negligence and that it then devolves upon the bailee to absolve himself from negligence. This is the established rule, and we are, therefore of the opinion that under the facts hereinbefore stated it was error to have granted the peremptory instruction in favor of the Gin Company.

The plaintiff undertook to show that it was customary for gins in that locality to take charge of ginned cotton left at the gins whether requested by their customers to do so or not, place the same in the compress, obtain the compress warehouse receipt and the sample, and then deliver the same to the customer when he should later call for them. This testimony was offered for the purpose of interpreting the meaning of the manager's statement to the plaintiff to come back later and get his "ticket and sample." Proof of such a custom is admissible where it is shown to be a general and uniform custom among the gins in the particular locality where both the ginner and the customer reside. In the instant case, this testimony was evidently excluded on the ground that each gin operator who undertook to testify was merely asked as to what his custom was and not as to what the general and uniform custom was in that locality. Nor was it shown that these witnesses were the only gin operators in that immediate vicinity. The exclusion of this proffered testimony is assigned as error, and we make the above observation in regard thereto for the reason that the case is to be remanded for a new trial, and in

order that the proof may be then admitted if the general custom is properly shown.

There was no request for a peremptory instruction on behalf of the plaintiff, and hence we express no opinion as to whether or not he would have been entitled to the same. We merely hold that the giving of the peremptory instruction for the defendant was error.

Reversed and remanded.