EDWARD TRACHTENBERG, Plaintiff, *v.* HOME INDEMNITY COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, May 27, 1953.

*Abraham Abramowitz* for plaintiff.

*James B. McLaughlin* and *James E. Sager* for defendant.

STARKE, J. Plaintiff assured, the owner of an automobile, is suing defendant insurance company for damages for breach of contract of insurance.

A novel question of law is presented for which there appears to be no precedent in the United States. The sole case cited, a Mississippi case, is not at all applicable and sheds no light whatsoever on the instant case.

The facts are conceded. The plaintiff's automobile was involved in a collision. At the time of the accident, he had a denture in his shirt pocket. His chest hit the steering wheel and the denture was broken beyond repair, necessitating its replacement. He sustained various bodily injuries but none to his mouth or gums. Defendant concedes liability in the sum of $103 for medical payments but disputes the additional item of $175 for the replacement of the denture.

The question is whether the denture is covered by the policy.

The insurance policy involved is a common form of automobile liability insurance policy covering the legal liability of the plaintiff for damages to others arising out of the use of the insured automobile and for collision damage to the automobile. An additional item of insurance coverage afforded under the policy is the " Medical Payments " coverage, called " Coverage C " in the policy, and is set forth under item 3 of the Agreed Statement of Facts, as follows:

" 3. That subject to exclusions, conditions and other terms of the said policy and a limit of liability $500 per person, defendant agreed with plaintiff to the following, contained in the policy:

' *Coverage C* ' — Medical Payments: To pay all reasonable *expenses* incurred within one year from the date of accident for *necessary medical,* surgical, ambulance, hospital, professional nursing and funeral *services to* or for *each person who sustains bodily injury,* sickness or disease, *caused by accident,* while in or upon, entering or alighting from the automobile if the automobile is being used by the named insured or with his permission." (Italics supplied.)

The plaintiff contends that there was an accident, that as a result thereof he sustained bodily injuries together with a broken denture, that the replacement of the denture was a necessary medical expense, and that if the accident had not occurred he would not have sustained a broken denture.

The defendant does not dispute that the sum of $175 is a reasonable expense which was incurred within one year of the accident, but maintains that the policy is intended to cover " bodily " injuries and not " personal property " damage.

The policy may be interpreted to mean that the company is liable for medical payments " to a person who sustains bodily injuries caused by an accident." That is how the policy

reads. It does not say " for " bodily injuries. Here the plaintiff did sustain bodily injuries as a result of an accident. It can therefore be argued that he came within the wording of the policy " a person who sustains bodily injury." It can also be urged that the company could have limited its liability by using words which would clearly specify that the medical payments would be " for " bodily injuries. It could have substituted the words " for bodily injuries " instead of " to or for a person who sustains bodily injuries." However, such an interpretation would indeed be a strict, severe and technical one.

On page two of the policy, Coverage A defines bodily injury liability. It protects the insured against liability for bodily injury to others. It may well be argued that where the insured becomes legally obligated to pay damages because of " bodily " injuries to a plaintiff in a personal injury action, a denture broken at the time of the accident could be considered a proper item of special damage.

It is true that if there should be any doubt as to the meaning of any clause in an insurance policy, it should be liberally construed in favor of the insured and strictly against the drawer of the policy (*Rice Oil Co.* v. *Atlas Assur. Co.*, 102 F. 2d 561, 571; 1 Joyce on Insurance [2d ed.], § 222, pp. 590, 591, 592). However, it is equally true that the policy must be given a reasonable interpretation, and the words used, their ordinary and usual meaning. A contract of insurance cannot be refined beyond the intents and purposes of the parties (*Marcus* v. *United States Cas. Co.*, 249 N. Y. 21). The words employed must be taken and understood in their plain, ordinary, usual and popular sense, and given a fair, reasonable and sensible construction. It is the plain meaning understandable to the average man that counts (*Levine* v. *Accident & Cas. Ins. Co.*, 203 Misc. 135).

The Mississippi case, cited by the defendant (*Terry* v. *National Sur. Co.*, 164 Miss. 394) is of no help. That case involved a policy covering bodily injury as a result of robbery. The insured was a college student who lost a diamond stud pin and tore his necktie in a fight for the goal posts following a football game and sued his insurer for the value of the pin. The court said (p. 400): " It will be observed that robbery as defined in the policy is the felonious and forcible taking of property from the person of the insured ' accompanied by bodily injury to the person from whom the property is taken, or by putting such person in fear of bodily injury.' Appellant sustained no bodily injury unless it can be said the

mere disarranging and tearing of his tie was bodily injury. We do not think it was. Injury to his wearing apparel alone did not constitute bodily injury in the meaning of the policy. The term ' bodily injury ' used in the policy means injury to the person.''

A fair and reasonable construction of the words used in the policy in accordance with their ordinary meaning to the average person and within the intentions and contemplation of the parties would be that Coverage C was designed to reimburse a person for bodily injuries — injuries to the person. If the plaintiff sustained an injury to his mouth and broke a real tooth, the company would of course be liable because the tooth is part of the body, and dental expense is encompassed within the term '' medical '' expense.

Can it be said that a denture is part of the body? If that be so, then a broken denture would be an injury to the body. A denture is unquestionably an item of personal property. However, applying the principle used in real property, a bridge may be so affixed in the mouth that it could be considered a permanent '' fixture '' and thus part and parcel of the human body. In such event the loss of the denture would be deemed a bodily injury.

Even if the denture was a removable rather than a fixed bridge, the loss would likewise be a bodily injury. The test is: '' was the denture *in use* at the time of the accident?'' The denture, when in use, is a functional accessory to a human organ or part of the anatomy and serves a physiological purpose. At the time it is in use it becomes part and parcel of the body.

In the case at bar, the denture was in the plaintiff's shirt pocket. That is not the natural place for a denture. Since it was not *in use* at the time of the accident, it was not then part and parcel of the body. Consequently, there being no bodily injury, the loss of the denture cannot be deemed a medical expense for bodily injury within the meaning, intent and purpose of the policy.

A different ruling might be possible if the evidence had been that the denture had been temporarily removed and placed in the pocket while the plaintiff was going through a trial or experimental period and that it was necessary for him to remove the denture after eating because of pain and discomfiture. It is a matter of common knowledge that most persons experience difficulty in arriving at a natural and comfortable adjustment during this period. that the gums may become irri-

tated and sore, and that the denture can only be worn while eating. In fact, it might be safe to say that during the trial or adjustment period " a denture is apt to be more comfortable in the pocket than in the mouth." On the theory that the denture was *temporarily* placed in the pocket during the trial period because of necessity and to alleviate pain, and was therefore still part and parcel of the body at the time of the accident, it might be proper under those special circumstances to rule that the broken denture is a medical expense for bodily injury. However, those facts are not present in the instant case.

With respect to such items as glasses, hearing aid, false eye, leg brace or artificial leg, the test to be applied is: " Was the item or personal property in use at the time of the accident as a functional accessory to a human organ or part of the anatomy?" It might even be fair to make an exception in the case of a hearing aid or glasses carried in the pocket because the pocket is a perfectly natural place to keep those items.

It is not sufficient to merely inquire whether the item is personal property and stop right there. The above test should be applied. This court cannot adopt the harsh view that a leg brace or an artificial leg is strictly an item of personal property and that the body ends where the leg stump ends. With regard to the contention that a " shoe " meets the definition since a shoe performs a physiological function and is an accessory to the foot, the answer is that by no stretch of the imagination can ordinary footwear be considered a " medical " expense.

This court holds that the defendant is not liable for loss of the denture in the case at bar. Judgment is therefore rendered for the plaintiff to cover only the conceded liability in the sum of $103 for the other injuries, without costs and disbursements in accordance with item 8 in the agreed statement of facts. Ten days' stay of execution.